Mr. and Mrs. Doe, etc. et al. v. Cape Elizabeth School Department. Go ahead, Counsel. Good morning, Your Honors. Richard O'Mara on behalf of Mr. and Mrs. Doe and their minor daughter, Jane. I'm quite pleased to reserve three minutes of my time for rebuttal. We're hearing this appeal under the Individuals with Disabilities Education Act because neither the administrative hearing officer nor the district judge properly applied the legal test for IDEA eligibility for students with learning disabilities. And that is the critical issue, is that test for a student like Jane who's had a long-standing learning disability that currently affects her reading fluency. The statute doesn't give us much guidance, and we admit that. It has a two-part test for eligibility. It says you have to have one of the listed disabilities. A specific learning disability is one of them. And then by reason thereof, you have to need special education services. All of the meat is in the United States Department of Education's regulations. And the regulation at 300.309 that we've cited in our brief is the key. There's really two prongs to the test for learning disabled students. One is there has to be evidence that the student has a pattern of strengths and weaknesses that the team that's looking at the evidence determines to be relevant to a learning disability. The team agreed on that one here, so there's no dispute. They've known she's had dyslexia since she was in first grade, and she's in eighth grade going to ninth grade at the time of this decision. Everybody knew that she met that criteria. It's the other criteria that Judge Levy found against us on and said was a grounds for denying her eligibility going into high school, and that is whether Jane does not achieve adequately for her age in one or more of the areas that's cited in the regulations. And there are eight of them, and seven of them don't apply here. Only reading fluency applies. Counsel, may I? My sense is, and this seemed to be the way to a certain extent Judge Levy looked at the case, to some extent there may be a kind of common sense view at work that this young woman, because of her innate talents, a lot of hard work, supportive parents that have stood by her all along the way, is actually a very high-achieving child. She gets superb grades. The teachers attest to her skills in class. And so she is achieving. And so to isolate just one particular skill and conclude despite all of that success that she needs help to address that problem, when that problem is not an impediment to her success, that doesn't seem to be what IDEA is all about. What is wrong with that view? What's wrong with that is that it's directly contrary to the language of the regulations and to the comments of the department when it passed the regulations. The regulations are very clear that you can qualify under the statute and under a category of SLD if one of the areas is an inadequate performance. So you can be great at seven, but if one of them is no good and is below average, you can qualify for services. And, in fact, in the commentary, which the judge should have deferred to, as the comments of the agency interpreting its own regulation, what the Department of Education said was, we're including reading fluency, this category, in the eight categories, which it added in 2006. And we're doing it specifically because we think it would be easier for gifted children who have learning disabilities to qualify for services under the Act. That's changed. So it was put in specifically for this reason. I don't discount the fact that she's been able, through accommodations, to achieve very well in her classes. But she still faces a disability that requires services. They'll be very targeted services. She's not going to have a broad IEP. She's going to have a very narrow IEP that focuses on that one area. But that's what the Department of Education has said she's entitled to. Who has the burden and how does it work? So you have the burden to show that you're eligible. Correct. And does that include the burden of showing that you have not adequately achieved? Yes. Okay. So as I read the district court decision, the district court just concluded that that burden just simply wasn't met because, while there are some tests that experts for Jane conducted that raise an issue, he discounts the force of those tests. He then looks, is there anything else in the record that would show she's not achieving adequately by preponderance? He says, well, the fluency probes are awash because I can't make heads or tails which one I should defer to since they're competing. He says, all other things point to her being a strong student, so there's no red flag there. So why isn't that just a pretty ordinary review of the evidence, a conclusion that the burden wasn't met? I mean, where is he going wrong in that? Because the legal test requires you to look at the area of disability, not her overall performance. No, I understand that. But as I understand his opinion, he's looking for reading fluency, and he says there are some tests showing she's not so good at reading fluency that her experts conducted. And he says, I'm doubtful how strong that evidence is, given the concerns he had about their credibility and the like. Then he says there's reading fluency probes. I can't tell whether the ones that show her doing well are more important than the ones that show her doing poorly. So that's awash. And then he says, what's left? Well, nothing that shows to me she has a problem. So maybe there's not evidence to show she is achieving adequately, but since the burden is on you, I read him to be saying that burden simply wasn't met on this record, and I'm trying to figure out where that's wrong. I wonder if I might just piggyback on Judge Barron's question. You can work it into your response, because I think it goes to the very point that Judge Barron is addressing. The district courts seem to say a little more in this sense, that the district court points out that some of these fluency tests, if you will, did not factor into the decision of the administrative hearing officer or the IEP team. And because they did not factor into their determination, the court saw no reason for it to consider those fluency probes, if you will. How does that factor in? That's incorrect as well. This goes to our whole point on the legal challenge. This is not an appeal. And the law is very clear it's not an appeal. It's a civil action, and the judge is supposed to take additional evidence on motion, which he did. And we gave him additional evidence, some of which is very important, because it pointed out that actually the fear that the parents had in this case was that when she left eighth grade and went to high school, she was going to struggle. And all the additional evidence we put in showed her struggles through that first semester of high school. And it showed Cape Elizabeth's own testing of her on reading fluency probes in ninth grade, none of which came close to meeting the standard that they had been saying she was reaching a year before. And so the judge was supposed to take into account all of that evidence, and he didn't. He basically made no findings, although he requested them, on any of the additional evidence of how she struggled, how she needed extra time in her classes to take tests, how she needed a recorded textbook in history because she couldn't read the textbook, how her father had to read assignments to her for her to do them, and how she didn't pass any of the four reading fluency probes that were given to her at the beginning of ninth grade. All that evidence needed to be considered under the test, otherwise the judge, and he does it several times, and he affirms that's not the right standard. So you characterize that as a legal error. It seems to me in one of the amicus briefs they view it differently. They view it as a clear error issue on whether the evidence establishes that she has this special learning disability that would require to get the continued support that you're asking for. It does seem they take a, not for a matter, but they seem to take a different view than you do. They view it, again, as a clear error situation, not a legal error as you're characterizing it. I think it's a legal error because it's a standard of review that the judge recites at the beginning saying I take additional evidence and I go on a preponderance of the evidence. But then when we presented the evidence and factual findings, none of it was addressed. Well, can I just ask him, he says. I think this is the key passage. This is with respect to the fluency probes, right? That's part of the additional evidence, but that was the only thing he actually addressed in his decision of all the additional evidence we presented were the ninth-grade fluency probes. I see. Maybe I'll come to that. With respect to the ninth-grade fluency probes, he says based on the record before the court, I am ill-equipped to resolve the question of which reading fluency probes are more accurate. Isn't that just a finding that I'm not considering it, but just looking at it, it doesn't tip the balance? It's not a question of accuracy, Your Honor. He was comparing probes that existed from over a year before to probes that were done in ninth grade right after this decision was made. They were done by Kate Elizabeth with Kate Elizabeth's testers. Well, that's a clear error argument I think is what you're making there. In other words, what he's saying, I've looked at these reading fluency probes and I don't find them to tell me that they show she can't adequately achieve. Now you say, well, he's wrong about that, and that would be clear error. As to the legal point, he then goes on to say, nor is it necessary for me to do so here given the IEP team did not consider the measure and the hearing gave no more than glancing consideration to it. He's saying that also doesn't fill it in for me. So he's just saying I looked at all the record, I don't find them to tell me what to do, and if I look behind, I don't see anything from the IEP team or the hearing officer that suggests I should be finding it one way or the other. So, again, it seems to me it's not a legal mistake he's making. If there's a mistake here, you would say it's a factual error in that they're being, so where am I going wrong? It's not a factual error. Neither the IEP team nor the hearing officer focused on fluency. They didn't look at the question of her fluency. They both said she's doing well regardless of her disability, so we're not going to find her eligible. That's not the right test. The judge did the same thing at the district court level. Basically said I'm going to look at her grades, none of which really rely on fluency, and to the extent she has accommodations like recorded textbooks and extra time, the grades don't measure fluency. He said I'm going to look at her standardized tests from the state. Those are untimed, so they don't test fluency. Right, but where's the affirmative evidence that he finds? I read him saying but I don't see any affirmative evidence that she's not adequately achieving that I credit. And since he doesn't find any of that and the burden's on you, I read him to simply be saying you haven't met your burden. I don't read it that way at all. At this point, the additional evidence showed that exactly what was predicted occurred. He says, well, the IEP team and the hearing officer didn't take that into account. There's a very obvious reason for that. The evidence occurred after the IEP team meeting and after the hearing officer ruled. Isn't that the legal error? Because this is not an appeal, and the fact that the IEP team didn't consider it, the fact that the ALJ didn't consider it doesn't mean that the district court should not consider it in making its own independent determination by a preponderance of the evidence whether the learning disability has been established. That was our point. And I thought you were arguing that that is an example of a legal error. It's a kind of confusion of roles of the district court as to its role in making this determination. Absolutely. We made proposed findings of facts based on all of that additional evidence. Very little of it even made it to the decision, and the decision being written as an appeal and as an affirmance suggests that the judge didn't take the role seriously of being a fact finder, so I don't think I'm stuck with I didn't meet my burden. The evidence is there for him to rule on. He just gave the big lens instead of focusing on the question and answering it. Thank you. Thank you. Your Honors, Eric Erlin and Aaron Feltes for Cape Elizabeth School Department. I want to try to follow right up on the points that you're wrestling with and we're all wrestling with here today about inadequate achievement. The hearing officer initially, and then the court in its review, had an extensive amount of evidence about this child's reading fluency. Many, many tests, many sub-tests, many composite tests, many tests on reading fluency. And those were all before the hearing officer. Later there before the court, there was a little bit of supplemental evidence in the form of an affidavit from the parent, not subject to cross-examination, on the efforts the child went through in reading in ninth grade. All of this was, and the reading probes, the additional reading probes, fluency probes that were taken, all of this was before the court. The court, it is certainly my understanding, the court has its discretion to weigh this evidence and to see what is influential to it and to emphasize the points that's influential to it. I don't believe there's a legal duty for the court to have gone through every paragraph in the parent's affidavit that was offered to supplement the record, and that's the only supplement. Is it proper for the district court to say that I'm not going to consider evidence on reading fluency if the ALJ did not consider it? Is that a proper approach? And that's very clear. I don't think that's clear, and I don't think the court doesn't say that he did that. He said, I'm looking at these probes, as Judge Barron said, I'm looking at these probes, before and after probes, and they're awash to me. And he didn't address, he didn't speak to certain paragraphs in the parent's affidavit and I think looked more broadly. I think he was referring to the language immediately after he said the reading probes were awash. He said something about the hearing officer and the IEP team hadn't, it could be interpreted that he said they hadn't considered those. I'm not sure how to interpret it, but I know that this court has made very clear the importance of the decision-making process at the time that it's made, which is what is before the hearing officer. There was a decision made in May of 2013, and that's the decision and the administrative law judge's ruling on that decision. We can do a supplement to the record with the court, and it's certainly permissible to do, and it's not out of bounds, and it shouldn't be out of bounds for the court to look at it, but it's understandable to, I don't think the court's very explicit on this, but it's understandable to give some greater weight or emphasis to its review of the hearing officer decision. And I think as this court has said it should do, both in the Lessard court ruling and in the Roland Nemb court ruling, we're not Monday morning quarterbacking these decisions. Counsel, let me ask you about the nature of reading fluency and how judgments are made about it. There are all these different tests that are referred to, but I understand Appellant to be arguing in part that the best way to determine reading fluency is to listen to the child read. And somebody who is expert in analyzing how a child reads can make a judgment as to whether there are in the way that the child reads. And I understand the argument is that if you look at those results, those results strongly support the proposition that this child continues to have a significant learning deficit in reading fluency. Forget all the fancy tests that go to an underlying processing disorder. If you consider the best measure of reading fluency there, all the measures indicate that she has a continuing deficit. I have two responses to that. The first response is there were a great number of those exact tests, and the weight of them came out the other way, not in the child's favor, but they came out the other way. But setting that assessment, that balancing aside, the law of the law. I just wanted to help you focus your answer. I understood that Appellant was focusing on the evidence of those deficits with respect to reading that she's expected to do in ninth grade. Is that not correct? There's very little evidence about ninth grade reading. There's like six paragraphs from a parent's affidavit. There's hundreds and hundreds of pages about reading fluency from the original administrative hearing. I'm clumping those all together and saying that the weight certainly goes the other way, but I want to get at the legal point that you're raising here. There's not a ruling in the country, and there's not a standard in the statute, and there is not a standard in the regulation that limits you to specific oral reading fluency tests in measuring reading fluency. And, in fact, if you look at the language that the family relies on in .309, it makes clear you can look more broadly than specific reading fluency. And my vision isn't what it should be, but when I look at this language, it says the child doesn't achieve adequately for the child's age or to meet state-approved grade-level standards in one of the eight areas when provided with learning experiences and instruction appropriate for the child's age or state-approved grade-level standards. That language draws you right to some of these broader measures than simply the technical oral reading fluency test. It asks us to look at performance in those broader areas, as you started out in your questions to Mr. O'Meara. And then I would point out in the family's brief to this court, where they talk about reading fluency on page 19 of their briefs. They talk about the No Child Left Behind Act's reference to reading fluency and the importance of reading fluency, and they quote from the law with reading fluency, including oral reading skills. So reading fluency is not just oral reading. Reading fluency is a broader concept. It could include silent reading. It could include just the general ability to read and draw from text. This language in the federal law makes clear contrary to their argument that it is not simply an oral reading measure, although even with the oral reading measures, there was plenty of evidence and testing evidence showing that her oral reading was adequate and certainly adequate to meet that regulatory language that references achievement of grade level standards with the same HPOs. With respect to the supplemental evidence, if the district court simply said, I'm not going to make any finding on it because it wasn't presented to the IEP and the hearing officer, would that be legal error? I think that's the judge's discretion, too. If he said, I'm legally barred from it, I'm legally barred from doing it, that would probably be legal error because the law allows him to receive it. But whether he wants to credit it or not, I assume it's his discretion in that he might not credit opinion of the parent of the child. And is that the standard of review for us on that type of question is an abusive discretion standard? It would be a clear error standard, an abusive discretion standard. Yes, on that decision about whether to credit that evidence. Because the judge isn't required to take supplemental evidence. It's an abusive discretion standard if he denies a request that he take supplemental evidence. So it seems to me that that abusive discretion standard would probably fall through. I would think that, but you know better than I. The way you would read the district court opinion on this issue with respect to the reading fluency probes would be something like, I looked at them. I'm not really in a great position to figure out who's right or who's wrong. The IEP and the hearing officer never looked at them, so it's not necessary for me to dive into it. And that's a permissible discretionary decision about how to handle supplemental evidence. I might not summarize it exactly like you did, but I believe even as you summarize it, that would be an abusive discretion standard. I've looked at it, and this is how I weigh it or discount it. I believe that's true. Now, I'm not sure the court is looking at these additional issues, but I want to highlight that in order for the family to prevail here in this case, we're all focusing on this inadequate achievement standard. But in fact, in the state of Maine, you have to demonstrate a processing disorder. The child has one. You have to demonstrate inadequate achievement, and you also have to demonstrate that the child needs special education in order to benefit the school program, which I think hooks into some of what Judge Lopez was wondering about, about the broader view. If you've got a child who's really doing well in school, are they going to be found eligible under the IDEA? And the answer ultimately ends up being no, because in any eligibility decision, you ask if they need special education. Well, those are large issues, counsel, which I understand the district court felt it did not have to address. I mean, the appellant is arguing that the state of Maine has adopted two regulations, which are designed in the appellant's view to minimize the extent to which it will be found locally that children need the special education, and that those two regulations are directly contrary to federal law, to federal regulations, and should be declared invalid. They seem to understand that to prevail, they have to succeed there as well. Yes, I think he described them wonderfully as rogue regulations. So in that situation, I would note in terms of the challenge, any challenge to the state's regulation about the need for special education, that argument that he's making was not raised at earlier levels. He did not challenge the validity earlier on of that particular regulation. He certainly challenged the validity of the processing disorder regulation. But Maine's definition of the need for special education, which is the third legal issue in this case, not ruled on by the district court, but, yes, ruled on by the administrative law judge, that third standard, that challenge to that regulation, has not been raised down below. He has not argued that Maine's regulation violates the IDEA. Yes, he did with the processing disorder. No, he didn't with the... You know, there is something sort of unappealing about the concept of that sort of needs regulation. I mean, the premise seems to be that if a child with a significant learning disability, nevertheless is able to achieve for all the reasons we've talked about before, it doesn't count for purposes of the IDEA. And so to some extent, a child and a family, they're being penalized because they have worked so hard to overcome those deficits, which continue. That does seem very contrary to the spirit of the Act. Well, it's not a law that stands alone. And there are other laws for students with disabilities that may come into play. But the IDEA is a service law. It's a law that directs funds from the federal government down to the state and to the local school districts for the purpose of funding services for students in special education. And it's written into the law. And Mr. O'Meara started his argument by pointing out there is this duty that you have to need special education. Now, he and I will argue about what it means to need special education. The state of Maine and its rules has defined it, something he did not challenge earlier. But it's a common-sense view. And I think, really, you started this discussion off with this common-sense view. Good effort, hard work, great parents, all that stuff. A child may have a difficulty in a certain area but does not need specialized instruction to do, not just adequately well, but in her case, extremely well in school, then they would not qualify under this law. Which doesn't necessarily mean they don't carry a deficit of some sort, but they wouldn't qualify under what's really a service law. It's not an abstract eligibility law. But the problem is that if the reason they're achieving is because of the services they're receiving, then it seems a little bit of a catch-22, which is you're now achieving because of the services, therefore we won't give you the services. What's interesting about this case is in terms of her special ed services, she had been eligible. And those special ed services cut back and cut back and cut back. And essentially disappeared a year before the eligibility decision. And so we look at her in the second half of seventh grade and the first two-thirds of eighth grade leading up to the decision, and she's doing wonderfully well. She's a straight-A student. She's got a great school civic-mindedness. She's involved in extracurricular activities. She's just like a wonderful student. She doesn't need specialized instruction in order to do, not just adequately, but extremely well in school. And that's that. Mr. O'Mara says, I guess he'll speak to this, that that view is directly contrary to federal law, that that overall sense she's achieving wonderfully and so we don't have to worry about her ongoing problems with a specific disability. That's not, that view is contrary to federal law. I don't think there's a decision out there that makes that point, that you're eligible even if you don't need special ed. So thank you. Let me start there because I think that's an important point. The Department of Education would not have put in its responses to comments, from all these people that didn't want reading fluency to be a category, that it was putting it there so that gifted children could be served when they had learning disabilities if it didn't want gifted children to get the services under the IDEA. Jane's IQ may not reach the gifted range, but she's high average IQ. She's very bright, and she's very hardworking. She has great parents. But that's not a penalty. She should be able to get the services to address her needs. Did you raise this issue below? Yeah. Well, the problem with the state regulation is we didn't challenge the regulation because it has two parts. One part favors us, and one part favors the school. So we use the part that favors us. It says a distinct, measurable, persistent gap in performance. That's need. That's what we have. Then there's a second part that says that you need to have the educational services specialized in order to benefit from your school program. That's the part that's contrary to federal law. Yeah, but you didn't make that argument in the district court. I did make it in the district court. I didn't raise it to the hearing officer because we used the other half of the regulation, the definition of which specifically fit our situation. The regulation speaks out of two sides of the mouth, and obviously the part that favors us is the part I cited. Mr. Harlan cited the other part. The part that he cited is directly contrary to federal case law. The Yankton case, which I cited to you, shows that you can need special education for a specific course, in that case somebody with a mobility impairment can need it for their PE class, even if they're bright and doing well in school otherwise. The statute works in narrow ways for some kids, and that's what happens here. Mr. Harlan also said in his argument that the weight of the authority that the hearing officer had showed that her reading fluency was in the average range. That's not true at all. Quoting out of her decision at page 32 of the addendum, reading fluency is an area of weakness for the student, is what the hearing officer said. That's how she summed up the assessments. Then she went on and said, but I'm going to fight against her because she's gotten good grades and she does well on the main untimed standardized tests. That's the problem. She's not looking at whether she achieves adequately in reading fluency. She's looking at whether she achieves adequately in all the other areas of academic life. On the issue of the Monday morning quarterback quote that Mr. Harlan gave you, that applies to IEPs. It does not apply to eligibility tests. This court has rightly said when a team does an IEP for a student, you look at it as of the time it's made up. But an eligibility decision can get worse over time. When this student's service is stopped in seventh grade and she went into eighth grade with no special education and no landmark that summer, her parents decided not to send her. Her fluency went down in every measure. So in December when the school measured it, it dropped from the 50th percentile down to the 25th. When the parents expert measured it three months later, it was at the 16th percentile. When the reading rate was tested, it was the 7th percentile. And in that summer when she was tested with the ninth grade materials, she was in the high risk range for reading all the ninth grade materials. Thank you. Thank you.